IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| JAMES S. STRICKLAND, | )Civil Action No.: 4:08-cv-2332-GRA-TER |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs | ) |
| | )  REPORT AND RECOMMENDATION |
| DR, ALEWINE, DR. FITZJERAL, | ) |
| AND DR. BABB[1], | ) |
| | ) |
| Defendants. | ) |
| _____ | ) |

## I.  PROCEDURAL BACKGROUND

The plaintiff, James S. Strickland ("plaintiff/Strickland"), filed this action under

42 U.S.C. § 1983[2] on June 25, 2008.  At all times relevant to the allegations in the

plaintiff's complaint, he was incarcerated within the South Carolina Department of

Corrections. Plaintiff alleges that his constitutional rights were violated due to medical

indifference. Plaintiff had previously filed numerous motions including a motion to

---

[1] Plaintiff's motion to dismiss defendant Dr. Woods was granted by Order filed March 10, 2009.

[2]All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(d),DSC. Because this is a dispositive motion, the report and recommendation is entered for review by the district judge.

amend his complaint which were addressed in the Order of March 10, 2009.[3] In that

Order, the court gave plaintiff thirty (30) days from the date of said order to file "one

complete and concise proposed amended complaint naming the additional defendants

and allegations in relation to this action." (Doc. #154). Further, it was ordered that if

plaintiff failed to file said amended complaint within the thirty days, he would not be

allowed any further motions to amend in this action and that the parties would be

allowed to re-file their dispositive motions within twenty (20) days of the expiration

of the thirty day time limit. (See (doc. #154). Plaintiff failed to file an amended

complaint as directed within thirty days of March 10, 2009. Therefore, on April 30,

2009, defendants re-filed their motion for summary judgment pursuant to Rule 56 of

the Federal Rules of Civil Procedure  along with a memorandum and exhibits in

support of that motion. (Doc. #159).  Because the plaintiff is proceeding pro se, he

was advised on or about May 1, 2009, pursuant to Roseboro v. Garrison, 528 F.2d 309

(4th. Cir. 1975), that a failure to respond to the defendants' motion for summary

judgment with additional evidence or counter affidavits could result in dismissal of

his complaint. The plaintiff filed a response in opposition on May 13, 2009.

---

[3] Plaintiff has continued to file motions. Many of the motions are repetitive to the ones
dealt with in the order of March 10, 2009. The undersigned recommends that all other
outstanding motions be deemed denied as moot.

## II.  DISCUSSION

### A.  ARGUMENT OF PARTIES/ FACTUAL ALLEGATIONS

The plaintiff alleges that his constitutional rights were violated due to a deliberate indifference to his medical needs since January 2000. Plainitff asserts defendants have denied him proper treatment and medications for his asthma, seizure disorder, post-traumatic stress disorder, chronic back, neck and leg pain, and arthritis.

As stated, defendants re-filed a motion for summary judgment on April 30, 2009.

### B.  STANDARD FOR SUMMARY JUDGMENT

A federal court must liberally construe pleadings filed by pro se litigants, to allow them to fully develop potentially meritorious cases. See Cruz v. Beto, 405 U.S. 319 (1972), and Haines v. Kerner, 404 U.S. 519 (1972).  In considering a motion for summary judgment, the court's function is not to decide issues of fact, but to decide whether there is an issue of fact to be tried.  The requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim,  Weller v. Department of Social Services, 901 F.2d 387 (4th Cir. 1990), nor can the court assume the existence of a genuine issue of

material fact where none exists. If none can be shown, the motion should be granted. Fed. R. Civ. P. 56(c). The movant has the burden of proving that a judgment on the pleadings is appropriate. Once the moving party makes this showing, however, the opposing party must respond to the motion with "specific facts showing that there is a genuine issue for trial." The opposing party may not rest on the mere assertions contained in the pleadings. Fed. R. Civ. P. 56(e) and Celotex v. Catrett, 477 U.S. 317 (1986).

The Federal Rules of Civil Procedure encourage the entry of summary judgment where both parties have had ample opportunity to explore the merits of their cases and examination of the case makes it clear that one party has failed to establish the existence of an essential element in the case, on which that party will bear the burden of proof at trial. See Fed. R. Civ. P. 56(c). Where the movant can show a complete failure of proof concerning an essential element of the non-moving party's case, all other facts become immaterial because there can be "no genuine issue of material fact." In the Celotex case, the court held that defendants were "entitled to judgment as a matter of law" under Rule 56(c) because the plaintiff failed to make a sufficient showing on essential elements of his case with respect to which he has the burden of proof. Celotex, 477 U.S. at 322-323.

## C. MEDICAL INDIFFERENCE

As previously discussed, plaintiff alleges that defendants were deliberately indifferent to his medical needs by denying him medical care and proper medication since January 2000 for his seizure disorder, post traumatic stress disorder, chronic back, neck and leg pain, asthma, and arthritis.

Defendants submitted the affidavit of Dr. J. Glenn Alewine who attests that he is a physician licensed to practice medicine in the State of South Carolina, and is employed by the South Carolina Department of Corrections ("SCDC") to provide medical services to inmates. (Affidavit of Dr. Alewine). Based on plaintiff's SCDC medical records, plaintiff was first seen on January 16, 2001, when he presented with a "history of bipolar disorder, panic attacks, asthma, back problems, arthritis and seizure disorder." (Id.). Plaintiff had "850 medical/mental health encounters with SCDC medical/mental health staff and with outside medical and mental health consultants" from January 16, 2001, until October 1, 2008. (Id.). SCDC doctors and outside medical care providers have changed or adjusted plaintiff's medical and mental health treatment, including his numerous medications, as his physical and mental conditions changed. (Id.). At times, plaintiff refused medical and mental health care and treatment offered including administration of medications and x-rays. (Id.). Certain medications were discontinued for periods of time due to plaintiff selling them

5

to other inmates. (Id.). At the time of the affidavit, Dr. Alewine averred that plaintiff was on at least nine different medications for his chronic conditions and additional medications for his acute medical and mental health problems. (Id.). Plaintiff had a MRI in August 2006, because of chronic complaints of back and leg problems. The results of the MRI revealed "a radiculopathy in his lumbar spine." (Id.). Plaintiff was evaluated by an orthopedic surgeon, a neurologist, and a neurosurgeon. (Id.). Plaintiff was on crisis intervention for several months while at Broad River, Lee, and Lieber Correctional Institutions in 2007 because of self-destructive behavior.(Id.).

As to plaintiff's claim that SCDC refused to give him a copy of his VA records, Dr. Alewine attests that on July 14, 2008, plaintiff refused to sign the release form to obtain the records from the VA. (Id.).

Dr. Alewine attests that plaintiff has received and continues to receive more than adequate care and treatment for all of his medical and mental health problems. (Id.). If plaintiff experiences any potential serious or life threatening medical or mental health conditions, the records presented show he obtains immediate or emergency care. (Id.). Plaintiff's complaints about his medical and mental health care usually involve a disagreement about how he should be treated and what medications he should receive. (Id.). Dr. Alewine attests that defendants have not acted with deliberate indifference and have not violated any standards of medical/nursing

6

practice in the care and treatment of plaintiff.(Id.).

The undersigned finds that the plaintiff fails to show that defendants were deliberately indifferent to his medical needs. In the case of Estelle v. Gamble, 429 U.S. 97 (1976), the Supreme Court reviewed the Eighth Amendment prohibition of punishments which "involve the unnecessary and wanton infliction of pain," Id., quoting Gregg v. Georgia, 428 U.S. 153, 169-73 (1976). The court stated:

> An inmate must rely on prison authorities to treat his medical needs; if the authorities fail to do so, those needs will not be met. . . . We therefore conclude that deliberate indifference to serious medical needs of a prisoner constitutes the "unnecessary and wanton infliction of pain," Gregg v. Georgia, supra, at 173, (joint opinion), proscribed by the Eighth Amendment. This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983.

Estelle, 429 U.S. at 103-105. (Footnotes omitted)

Despite finding that "deliberate indifference to serious medical needs" was unconstitutional, the court was careful to note, however, that "an inadvertent failure to provide adequate medical care" does not meet the standard necessary to allege an Eighth Amendment violation:

. . . a complaint that a physician has been

> negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

Estelle, 429 U.S. at 107.

The Court of Appeals for the Fourth Circuit has also considered this issue in the case of Miltier v. Beorn, 896 F.2d 848 (4th Cir. 1990). In that case, the court noted that treatment "must be so grossly incompetent, inadequate or excessive as to shock the conscience or to be intolerable to fundamental fairness (citation omitted), . . . nevertheless, mere negligence or malpractice does not violate the Eighth Amendment." Id. at 851. Unless medical needs were serious or life threatening, and the defendant was deliberately and intentionally indifferent to those needs of which he was aware at the time, the plaintiff may not prevail. Estelle, supra; Farmer v. Brennan, 511 U.S. 825 (1994); Sosebee v. Murphy, 797 F.2d 179 (4th Cir. 1986).

Further, incorrect medical treatment, such as an incorrect diagnosis, is not actionable under 42 U.S.C. § 1983. Estelle v. Gamble, supra. Negligence, in general, is not actionable under 42 U.S.C. § 1983. See Daniels v. Williams, 474 U.S. 327, 328-36 & n. 3 (1986); Davidson v. Cannon, 474 U.S. 344, 345-48 (1986); Ruefly v.

8

Landon, 825 F.2d 792, 793-94 (4th Cir.1987); and Pink v. Lester, 52 F.3d 73, 78 (4th

Cir. 1995) (applying Daniels vs. Williams and Ruefly v. Landon: "The district court

properly held that Daniels bars an action under § 1983 for negligent conduct.").

Secondly, 42 U.S.C. § 1983 does not impose liability for violations of duties of care

arising under state law. DeShaney v. Winnebago County Department of Social

Services, 489 U.S. 189, 200-03 (1989). Similarly, medical malpractice is not

actionable under 42 U.S.C. § 1983. Estelle v. Gamble, supra, at 106 ("Medical

malpractice does not become a constitutional violation merely because the victim is

a prisoner.") See also Brooks v. Celeste, F. 3d 125 (6th Cir. 1994) (Although several

courts prior to the Supreme Court's decision in Farmer v. Brennan, supra, held that

"repeated acts of negligence could by themselves constitute deliberate indifference,

Farmer teaches otherwise."); Sellers v. Henman, 41 F.3d 1100, 1103 (7th Cir. 1994)

("If act A committed by the X prison shows negligence but not deliberate indifference,

and B the same, and likewise C, the prison is not guilty of deliberate indifference.");

White v. Napoleon, 897 F.2d 103, 108-109 (3rd Cir. 1990); and Smart v. Villar, 547

F.2d 114 (10th Cir. 1976) (affirming summary dismissal).

Although the Constitution does require that prisoners be provided with a certain

minimum level of medical treatment, it does not guarantee to a prisoner the treatment

of his choice." Jackson v. Fair, 846 F. 2d 811, 817 (1st Cir. 1988). Although the

provision of medical care by prison officials is not discretionary, the type and amount of medical care is discretionary. See Brown v. Thompson, 868 F. Supp. 326 (S.D.Ga. 1994).  Further, a disagreement as to the proper treatment to be received does not in and of itself state a constitutional violation.  See Smart v. Villar, 547 F. 2d 112 (10th Cir. 1976); Lamb v. Maschner, 633 F. Supp. 351, 353 (D.Kan. 1986).  Mistakes of medical judgment are not subject to judicial review in a § 1983 action. Russell v. Sheffer, 528 F. 2d 318, 319 (4th Cir. 1975).

The plaintiff has failed to show that he was denied medical treatment. As noted from Dr. Alewine's affidavit and plaintiff's voluminous medical records, plaintiff was examined on numerous occasions over the course of his incarcerations by the medical personnel at SCDC and outside specialists, provided medication, given x-rays, and had his medical needs attended . Plaintiff even refused care and treatment at various times. (See Dr. Alewine's affidavit and medical records).  There is no evidence that defendants denied plaintiff medical treatment or care. Plaintiff has not presented any medical evidence to show that he suffered any permanent injury as a result of his allegations.

As held in Estelle, 429 U.S. at 107, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Even if plaintiff's allegations are

true, he has shown nothing more than a disagreement with the medical treatment provided, not that he was completely denied medical treatment. Plaintiff has not put forth any allegation or evidence that he received anything other that <u>de minimis</u> injury. Additionally, plaintiff has failed to show that he had a serious medical need of which defendants knew about and consciously ignored. Plaintiff has not shown that any conduct by the defendants "shocks the conscious" as required by <u>Miltier v. Beorn</u>, <u>supra</u>. "Although the Constitution does require that prisoners be provided with a certain minimum level of medical treatment, it does not guarantee to a prisoner the treatment of his choice" <u>Jackson v. Fair</u>, <u>supra.</u> The type and amount of medical care is left to the discretion of prison officials as long as medical care is provided. <u>Brown v. Thompson</u>, <u>supra</u>. Any disagreement between an inmate and medical personnel fails to state a claim unless exceptional circumstances are alleged . . . Although there is nothing to indicate that there were mistakes of medical judgment, even if shown, mistakes of medical judgement are not subject to judicial review in a § 1983 action. <u>Russell v.Sheffer</u>, <u>supra</u>.

Based on the evidence presented, there has been no deliberate indifference shown to the overall medical needs of the plaintiff by the defendants in this action. For the above stated reasons, summary judgment should be granted in favor of defendants

on this issue.[4]

## D. QUALIFIED IMMUNITY

Defendants argue that they are entitled to qualified immunity. The Supreme

Court in Harlow v. Fitzgerald, 457 U.S. 800 (1982), established the standard which

the court is to follow in determining whether the defendant is protected by this

immunity.  That decision held that government officials performing discretionary

functions generally are shielded from liability for civil damages insofar as their

conduct does not violate clearly established statutory or constitutional rights of which

a reasonable person would have known.  Harlow, 457 U.S. at 818.

In a discussion of qualified immunity, the Court of Appeals for the Fourth

Circuit  stated:

> Qualified immunity shields a governmental
> official from liability for civil monetary
> damages if the officer's conduct does not
> violate clearly established statutory or
> constitutional rights of which a reasonable
> person would have known. In determining
> whether the specific right allegedly violated
> was 'clearly established,' the proper focus is
> not upon the right at its most general of
> abstract level, but at the level of its application

---

[4] As to any allegation plaintiff attempts to raise with regard to the conditions of confinement, it is recommended that these claims be dismissed as plaintiff the only named defendants are medical doctors and any such allegations do not relate to his medical care.

> to the specific conduct being challenged. Moreover, the manner in which this [clearly established] right applies to the actions of the official must also be apparent. As such, if there is a "legitimate question" as to whether an official's conduct constitutes a constitutional violation, the official is entitled to qualified immunity.

Wiley v. Doory, 14 F. 3d 993 (4th Cir. 1994) (internal citations omitted), cert. denied,

516 U.S. 824 (1985).

In Torchinsky v. Siwinski, 942 F. 2d 257 (4th Cir.1991), the Fourth Circuit

Court of Appeals explained the rationale for Harlow qualified immunity:

> The grant of qualified immunity to government officials ensures that these officials can perform their duties free from the specter of endless and debilitating lawsuits. Without such immunity, the operations of government would be immobilized. Permitting damages suits against government officials can entail substantial social costs, including the risk that fear of personal monetary liability and harassing litigation will unduly inhibit officials in the discharge of their duties.

Torchinsky, 942 F.2d at 260-261. (Citations Omitted).

The Torchinsky court further noted that "a particularly appropriate procedure

for determining an official's entitlement to qualified immunity is summary judgment."

The Torchinsky court held that an official's entitlement to qualified immunity is based

upon an "objective reasonableness" standard. "The very idea of reasonableness requires that courts accord interpretive latitude to officials judgments." Torchinsky, 942 F. 2d at 261, citing Sevigny v. Dicksey, 846 F. 2d 953 (4th Cir.1988). Therefore, a plaintiff may prove that his rights have been violated, but the official is still entitled to qualified immunity if a reasonable person in the "official's position could have failed to appreciate that his conduct would violate" those rights. Torchinsky, 942 F. 2d at 261, citing Collinson v. Gott, 895 F. 2d 994 (4th Cir. 1990). As the Fourth Circuit explained in the case of Swanson v. Powers, 937 F. 2d 965 (4th Cir.1991), "[o]nly violations of those federal rights clearly recognized in existing case law will support an award in damages under 42 U.S.C. § 1983." 937 F. 2d at 967. Therefore, if a particular action by a state agency is deemed unconstitutional, the defendant is entitled to qualified immunity, unless there is clearly established case law demonstrating that the alleged conduct is violative of the Constitution.

In Maciariello v. Sumner, 973 F. 2d 295 (4th Cir. 1992), the Fourth Circuit Court of Appeals further explained the theory of qualified immunity when it set forth that:

> Governmental officials performing discretionary functions are shielded from liability for money damages so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.

14

Moreover, there are two levels at which the immunity shield operates. First, the particular right must be clearly established in the law. Second, the manner in which this right applies to the actions of the official must also be apparent. Officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines.

Maciariello, 973 F. 2d 295, 298 (4th Cir. 1992) (Citations omitted).

For a plaintiff to recover, he must show the defendants (i) violated a particular right clearly established in law, and (ii) the application of that right to the actions of the official must be apparent. The plaintiff in this case has not done so. Plaintiff fails to show that the defendants in this case "transgressed bright lines . . . officials are not liable for bad guesses in gray areas." Maciariello, supra. Therefore, the undersigned recommends that the motion for summary judgment be granted on the basis of qualified immunity.


**E. ELEVENTH AMENDMENT IMMUNITY**

The defendants contend that the plaintiff's §1983 claims against the defendants for money damages in their official capacities are barred pursuant to their Eleventh Amendment Immunity. Defendants also argue that the action against the defendants should be dismissed as a matter of law to the extent that they are sued in their official capacity because while acting in their official capacity as employees of the GCDC

they are not a "person" under 42 U.S.C. §1983 and, therefore, are not subject to suit.

When a defendant is sued in his or her official capacity, the suit is frequently intended as one against the state, the real party in interest. If review of the pleadings indicates that the state is, in fact, the party being sued, then a judgment awarding damages is precluded by the Eleventh Amendment of the United States Constitution. Although declaratory and/or injunctive relief may be granted, damages may not be awarded against the state.

In the case of Will v. Michigan Department of State Police, 491 U.S. 58 (1989), the Supreme Court analyzed the interplay between § 1983 and the Eleventh Amendment of the Constitution and stated:

> Section 1983 provides a federal forum to remedy many deprivations of civil liberties, but it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties. The Eleventh Amendment bars such suits unless the State has waived its immunity (cites omitted) or unless Congress has exercised its undoubted power under § 5 of the Fourteenth Amendment to override that immunity.

The Eleventh Amendment immunity granted to the states "applies only to States or governmental entities that are considered 'arms of the State' for Eleventh Amendment purposes," but the court found that state agencies, divisions, departments and officials are entitled to the Eleventh Amendment immunity. Will, supra at 70.

In reaching this conclusion, the court held that a suit against state officials acting in their official capacities is actually against the office itself, and therefore, against the state. State officials may only be sued in their individual capacities.

There is no dispute that the defendants were employees of the GCDC and, thus, are entitled to Eleventh Amendment immunity from monetary damages against claims against them in their official capacities.

## F.  PENDENT JURISDICTION

Assuming plaintiff's § 1983 claim is dismissed by this Court and plaintiffs' complaint somehow can be conceived to state an additional claim for relief under any state common law theory, the undersigned concludes that such claim(s), if any, ought to be dismissed as well for want of jurisdiction. Specifically, this Court can decline to continue the action as to the pendent claims if "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c).

## III.  CONCLUSION

For the reasons stated herein, it is RECOMMENDED that the defendants' motion for summary judgment (doc. #159 ) be GRANTED.

IT IS FURTHER RECOMMENDED that all other outstanding motions be

deemed MOOT.

Respectfully Submitted,


s/Thomas E. Rogers, III
Thomas E. Rogers, III
United States Magistrate Judge


February 2, 2010
Florence, South Carolina


The parties' attention is directed to the important notice on the next page.